**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ACE AMERICAN INSURANCE COMPANY**,<br><br>    Plaintiff,<br><br>v.<br><br>**ACCELLION, INC.**,<br><br>    Defendant.<br><br>**AND RELATED COUNTERCLAIMS** | Case No.: 4:21-CV-09615-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIM**<br><br>Dkt. No. 41 |

Before the Court is Ace American Insurance Company's ("Ace") motion to dismiss Accellion, Inc.'s ("Accellion") Amended Counterclaim ("ACC") asserted solely against Ace.[1] (Dkt. No. 41.)  At the June 14, 2022 hearing on Ace's initial motion to dismiss, the Court granted Accellion leave to amend its third through fifth counterclaims to more clearly articulate the harm it suffered as a result of Ace and its insured's alleged conduct.[2]  Accellion did so, and made other amendments.  Ace filed the instant motion.

**I.  BACKGROUND**

This case concerns the hacking of an unnamed non-party Boston law firm ("the Law Firm") allegedly through software licensed from Accellion.  The Court incorporates the background

---

[1] The Court has reviewed the papers submitted by the parties in connection with defendants' motion to dismiss and has determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78.  *See Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] The Court also granted leave to amend the sixth counterclaim, but Accellion declined to do so.

1  section of its order at docket number 28 regarding Ace's allegations. Relevant here, the Law Firm
2  was hacked and, with the assistance of its insurer, Ace, paid a ransom and incurred other costs.
3  Ace, on behalf of the Law Firm, brought the present action to recover those costs from Accellion.
4     Accellion brings counterclaims based on the following allegations:
5     In December 2020, cybercriminals exploited vulnerabilities in the software at a customer's
6  site. (Dkt. No. 40, ACC at ¶ 7.) Days after the attack, on December 20, 2020, Accellion developed
7  a patch, which it circulated to customers with a notice of the software's vulnerability. (*Id.* at ¶ 8.)
8  Accellion alleges that the Law Firm did not receive this notification because it "opted out from
9  receiving notifications of software updates from Accellion." (*Id.*)
10    On December 21, 2020, through around 5:35 p.m. on December 22, the Law Firm was
11 hacked. (*Id.* at ¶ 9). An "anomaly detector" embedded in Accellion's software detected this and
12 sent a notice to the designated recipient at the Law Firm. (*Id.* at ¶ 10). The recipient was out of the
13 office. (*Id.*) Accellion made multiple attempts, including by phone and email, to reach the firm.
14 (*Id.* at ¶ 9.) On December 22, it succeeded, and the firm installed the patch. (*Id.* at ¶ 9.) As a
15 result of the Law Firm's actions, Accellion incurred costs including costs for providing executive
16 forensic consultation and other support to the firm to address the hack. (*Id.* at ¶ 43.)
17    The Law Firm, in part through its insurer Accellion, paid costs including improvements to
18 its security and a ransom to the hackers. (*Id.* at ¶ 11.) The Law Firm and Ace did not contact or
19 consult Accellion before paying the alleged ransom or incurring the other costs they now seek to
20 recoup from Accellion. (*Id.* at 12.)
21    The Law Firm's use of Accellion's product was governed by an end user license agreement
22 ("EULA"). Section five of the EULA addressed security updates and provided in part that:

> "Accellion will make available to Customer all Updates to the supported Accellion Solution that Accellion makes generally available to its other customers. Customer shall provide Accellion access to the Accellion Solution to install such Updates if required by Accellion. Customer agrees to deploy any critical Updates, as identified by Accellion, within five (5) days following receipt."

27 (*Id.* at Ex. 1)

1    Additionally, section 13.8 of the agreement prohibited assignment of the EULA.  (*Id.* at ¶
2    55; Ex. 1.)

## II.   LEGAL STANDARD

The parties do not dispute the motion to dismiss standard which is well-known and well-established, including the inferences to be given and the burdens.

## III.   ANALYSIS

Accellion's amended counterclaim alleges that Ace and the Law Firm violated sections 5 and 13.8 of the EULA and the covenant of good faith and fair dealing implicit in the EULA.  Ace moves to dismiss all counterclaims.

### A.   First Amended Counterclaim: Breach of EULA Section 5

Accellion alleges that the Law Firm breached section 5 of the EULA by choosing not to get security updates and therefore failing to timely install the patch in the wake of the security breach, proximately causing harm to Accellion in the form of time and costs responding to the hack.

Ace argues that this counterclaim should be dismissed because, under the facts alleged in the counterclaim, the Law Firm complied with section five of the EULA which requires customers to make updates within five days of notice from Accellion.  The Law Firm installed the patch on December 22, within five days of the initial notice that Accellion sent to customers on December 20.

The initial counterclaim alleged the same facts regarding Accellion's December 20 notice and the Law Firm's installation of the patch on December 22.  However, Ace did not raise this argument in its first motion to dismiss.  Ace argued only that the counterclaim should be dismissed because the Law Firm had not received notice of the security update.  (Dkt. No. 33 at 9.)  Accordingly, Ace waived this argument. Fed. R. Civ. Pro. 12(g)(2) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."); *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (generally successive Rule 12 motions on different grounds not permitted).  In any event, the result is the same as Ace merely makes a factual dispute not appropriate in this procedural context.

3

Ace does not raise any other challenges to this counterclaim, including any arguments regarding whether Accellion has adequately alleged harm, which is the only part of this counterclaim that was amended. Accordingly, the motion to dismiss this counterclaim is **DENIED**.

### B. Second Amended Counterclaim: Breach of EULA Section 13.8

Accellion's second counterclaim alleges that the Law Firm breached the EULA by assigning its rights to Ace. Accellion's amended counterclaim alleges a long list of harms it alleges to have suffered. However, none of these harms stem from the assignment. The alleged damages are all costs incurred by Accellion in assisting the Law Firm in addressing the hack and would exist even if the Law Firm had not assigned its claims to Ace.

Accordingly, this counterclaim is **DISMISSED**. Given the lack of proffer that leave would be fruitful, dismissal is **WITH PREJUDICE**. *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014).

### C. Third Amended Counterclaim: Breach of the Implied Covenant of Good Faith & Fair Dealing

Accellion alleges that the Ace[3] and the Law Firm violated the covenant of good faith and fair dealing implicit in the EULA:

> (1) by paying the ransom amount without consulting Accellion and incurring fees and costs on behalf of the Law Firm, which Ace now seeks to recover from Accellion;
>
> (2) failing to communicate with Accellion in a timely manner after the anomaly detector was triggered, which Accellion alleges would have prevented the breach, and;
>
> (3) choosing to forgo notice of security updates. (ACC at ¶¶ 56-66.)

Under California law "there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of

---

[3] Ace also argues that it cannot be directly liable for breach of covenant because it was not a party to the EULA. (Dkt. No. 41 at 7.) The Court does not read the counterclaim to allege such direct liability and in its opposition to the motion to dismiss, Accellion states that it is bringing this counterclaim against Ace "standing in the shoes of the Insured." (Dkt. No. 46 at 18.) To the extent a direct liability claim was intended, it is barred.

4

the agreement." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400, as modified (July 26, 2000).  Ace's arguments do not attack any legal requirement, but are principally factual disputes inappropriate in this procedural context.  The Court addresses each.

### 1. Payment of the Ransom and Associated Costs

Ace argues for dismissal of this claim because (1) "Accellion has not identified any authority for its argument that a party to a contract violates a covenant of good faith and fair dealing [ ] by failing to provide a breaching party with an opportunity to mitigate its damages or [ ] by failing to consult with the breaching party before taking action to mitigate its own damages" and (2) Accellion has provided "no evidence that the law firm lacked belief in the validity of its conduct or that such conduct was objectively unreasonable."[4]  (Dkt. No. 41 at 8.)  These arguments are improper and unpersuasive.

A plaintiff does not have to provide authority or evidence in its complaint, it is merely required to plead a plausible claim.  Ace has not explained why this claim is not plausible based on the facts alleged.  Further, the contention that Accellion cannot bring this claim because it is a "breaching party" (presumably of the EULA) is an improper factual argument.  (Dkt. No. 41 at 8.)  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (stating that on motion to dismiss courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party").  Accordingly, Ace's motion to dismiss is **DENIED** regarding this part of the claim.

### 2. Communication After Notice from Anomaly Detector

Ace argues that the Law Firm cannot have breached the covenant by not responding to the anomaly detector email because the notice from the anomaly detector did not contain language clearly indicated the need to install the patch.  This is a factual argument.  Dismissal of this part of the counterclaim is **DENIED**.

---

[4] The Court does not consider arguments raised for the first time in Ace's reply that could have been raised in the motion.  *See Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n. 2 (9th Cir. 1993) (presenting new information in a reply is improper and deprives the opposing party of an opportunity to respond). In any event, the result would not change.

5

### 3. Failure to Timely Install the Patch

The Court does not consider Ace's numerous arguments over the facts underlying this counterclaim. (Dkt. No. 41 at 9-10.) Ace's one non-factual argument is that this counterclaim is merely a defense disguised as a claim because the counterclaim is "simply a denial of liability." (*Id.* at 10.) Not so. Accellion is not just seeking relief from liability for the costs incurred by Ace in addressing the data breach, it is also seeking to recoup the costs it incurred in helping to address the hack. (ACC at ¶ 66.) It is thus distinguishable from a defense against Ace's claims. Accordingly, the motion to dismiss this part of the counterclaim is also **DENIED**.

## IV. CONCLUSION

In conclusion, the motion is **DENIED** as to the First and Third Counterclaims and **GRANTED** as to the Second Counterclaim which is hereby **DISMISSED WITH PREJUDICE**

Ace shall file an answer within fourteen (14) days.

This terminates docket number 41.

**IT IS SO ORDERED**.

Date: September 15, 2022

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**